**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT MEYERS, | Civil Action No.: 07-5058 (PGS) |
| Plaintiff, | |
| vs. | **OPINION** |
| HOBOKEN BOARD OF EDUCATION, et al., | |
| Defendants. | |

**SHERIDAN, U.S.D.J.**

This is a discrimination, hostile work environment, and reprisal employment action brought by plaintiff Robert Meyers ("Plaintiff") against defendants the Hoboken Board of Education and Patrick Gagliardi (collectively "Defendants"). Plaintiff also alleges breach of contract, defamation, and violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq.; the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621-634; the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1, et seq.; the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1; and Plaintiff's First and Fourteenth Amendment rights. Currently before this Court is Defendants' motion for summary judgment, seeking dismissal of Plaintiff's complaint in its entirety. For the reasons set forth below, Defendants' motion is granted in-part and denied in-part.

1

## I.    BACKGROUND

Defendant, the Hoboken Board of Education (Board) is a public entity, which provides educational opportunities to students residing within its district through the management of various schools.  In 1998, Defendant Patrick Gagliardi, a forty-four year veteran of the Hoboken School District, was appointed Superintendent of Schools.   Gagliardi held that position until 2007.

Plaintiff was a tenured teacher and a member of the teacher's union within the Hoboken School District.  In 1972, Plaintiff began working in Hoboken High School as a music teacher.  His educational background included studies at Julliard School of Music, earning a bachelor's degree and a master's degree in music education from New Jersey City University, as well as qualifying for Supervisor's and Principal's Certificates.  Plaintiff held various positions within the school district including music teacher and Coordinator of Music (1982-2008).  He received an annual stipend for being the Coordinator of Music.

Plaintiff makes multiple allegations of wrongdoing by Defendants following Gagliardi's appointment to Superintendent, including failure to pay Plaintiff stipends, failure to accommodate Plaintiff's eye problems, retaliation due to Plaintiff's protected communications,  improper creation of and posting of job opportunities by Gagliardi, and withholding of Plaintiff's annual incremental raise.

### A.    Expansion of Plaintiff's Employment Responsibilities & Payment of Stipends

Plaintiff asserts that after Gagliardi became Superintendent, he eliminated much of the staff in the music and art departments.  Plaintiff states that he was coerced into taking on additional responsibilities, such as teaching and directing added choruses.  Plaintiff  alleges that Gagliardi doubled his teaching load to force him to retire.

In 2000, Plaintiff was assigned to teach music at Demarest Middle School. Two years later, his teaching responsibilities were expanded to Brandt Middle School. During the school week, Plaintiff often traveled between those two schools to teach classes or perform necessary functions. According to Defendants, this change was a result of staffing shortfalls caused by budget cuts, which were approved and implemented by the Board; Plaintiff contends otherwise.

Plaintiff also contends that he did not receive stipends for serving as Choral Director for Hoboken High School, Demarest Middle School, and Brandt Middle School for a number of school years. He estimates that the accumulated stipends total over $28,000 and that the failure to pay the stipends violates the Teacher's Collective Bargaining Agreement (CBA).

Upon realizing the error, Plaintiff was informed by Frank Cocuzza, a New Jersey Education Association (NJEA) Field Representative that the proper grievance procedure was to file through the NJEA. In 2004, Plaintiff pursued the stipend issue through his union, but dismissed the proceedings because Gagliardi threatened that his position would be abolished. In 2006, the Teachers Union's attorney, Gregory Syrek, advised Tom Desocio of the NJEA that he had met with Plaintiff in 2004 and again around January 2006 to discuss the stipends. Syrek stated that he advised Plaintiff both times that this issue should be raised through the grievance process and that "legal action beyond the grievance process would not be warranted."

Defendants' version is different. According to Defendants, plaintiff terminated his grievance application upon the advice of counsel and the teacher union president, Gary Enrico, but Plaintiff's position as a music teacher was never threatened. The issue of payment of the stipends has not been resolved.

3

### B.    Plaintiff's Eye Problems

Plaintiff suffers from eye problems, which stem from a clot in his eye that was treated by surgery.  Plaintiff underwent two surgeries – one for a cataract (February 2002) and another for a detached retina (December 2004).  Other than time to recuperate, Plaintiff did not require additional accommodations for his eye ailments in order to perform as a music teacher.

### C.    Plaintiff's Protected Communications

At some point, Plaintiff allegedly made protected communications regarding several illegal positions, including reporting  "no show" jobs, the illegal appointment of a principal, and the illegal posting of employment opportunities.  The content of the communications and to whom they were made are non-specific and very hazy.  Plaintiff contends that as a result of those communications, on March 20, 2006, Gagliardi posted an interoffice communication concerning the job description for Coordinator of Music.  The communication listed the major duties for the position, as well as the qualifications required and the stipend available.  Although the major duties were fundamentally identical to the Plaintiff's position, the qualifications for the position were significantly reduced.  Previously, the qualifications for the position included a master's degree; however, this job description listed a music teacher certification as the only requirement for the position.

Plaintiff also maintains that following his protected communications, he began receiving complaints that he was not signing out properly or as required.  At some point during Plaintiff's employ, Gagliardi instituted a policy that required teachers to sign in and out whenever they entered or exited a school building.  This policy applied to all teachers in the school district.  Throughout March and April of 2006, Plaintiff received several complaints and warnings from Principal Elizabeth Falco and her assistant, Jeanne Auriemma, that they were "watching him" and on occasion,

even called to verify Plaintiff's location after he signed out. Plaintiff alleges that Gagliardi's sign-in policy was aimed at solely him.

### D.    Posting for Director of Music Position

In the spring of 2006, Plaintiff submitted his retirement papers to the Board, effective in July 2006. However, Plaintiff withdrew his retirement papers upon learning that a Director of Music position had been created and filled by Peter Ising. Plaintiff was permitted to retain his employment status, benefits, and responsibilities, including his position as Coordinator of Music and its annual stipend.

Plaintiff maintains that the creation and posting of the position was improper because it was not approved by the collective bargaining unit and that Ising was not qualified for the position. Defendants state that the Director of Music position was created by Gagliardi in order to revitalize the school band and that Ising had already taken over the program prior to the official creation of the position. According to Defendants, Ising was appointed to that position because he had successfully turned around the band.

### E.    Plaintiff's Leave of Absence

At the start of the 2006-2007 school year, Plaintiff took a leave of absence for the year for medical/psychological issues. While on leave, Plaintiff received his annual salary and stipend for the Coordinator of Music position. However, Plaintiff did not receive an annual incremental raise to his base salary at the end of the 2006-2007 school year due to his leave of absence. It was the only school year in which Plaintiff did not receive an incremental raise. Defendants present that Plaintiff was one of at least two people who did not receive an incremental salary at the end of that year due to absenteeism. Plaintiff resumed his teaching and Coordinator of Music position in September

5

2007.  Plaintiff's version of events differs; Plaintiff states that his incremental raise was withheld by a Board resolution on April 28, 2006, several months before his leave of absence occurred.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (internal quotations omitted).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations.  *Anderson*, 477 U.S. at 248.  "[U]nsupported allegations" are insufficient to defeat summary judgment.  *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990).  Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgement.  *Anderson*, 477 U.S. at 247-48.  If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all

6

credibility determinations in his favor -- that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 Fed. Appx. 222, 227 (3d Cir. 2007).

### III.    DISCUSSION[1]

#### A.    Claims Under the ADA, ADEA, and NJLAD

The Supreme Court has set forth that claims under the ADEA and Title VII of the Civil Rights Act of 1964 should be construed under the same legal analytical framework. *See Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 755 (1979). Further, "the Supreme Court and the Third Circuit have expressly directed that the disparate treatment theory applied in Title VII claims should be adopted in ADEA claims." *Reich v. Schering Corp.*, No. 07-1508, 2009 U.S. Dist. LEXIS 90540, *26-27 (D.N.J. Sept. 30, 2009) (citations omitted). When there is no explicit discrimination, Title VII employment discrimination claims should be analyzed under the three-step *McDonnell Douglas* burden-shifting analysis. *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973).

The *McDonnell Douglas* burden-shifting analysis requires that the plaintiff bear the initial burden of establishing a prima facie case of discrimination. *Id.* at 801-04; *Johnson v. St. Luke's Hosp.*, 307 Fed. App'x 670, 671-72 (3d Cir. 2009) (citation omitted). Recently, the Supreme Court of New Jersey reaffirmed that it is the plaintiff's burden to establish a prima facie case of employment discrimination under the NJLAD. *Victor v. New Jersey*, No. A-2, 2010 N.J. LEXIS 834, *47 (N.J. Sept. 13, 2010). However, the Court cautioned that "[t]here is no single prima facie case that applies to all employment discrimination claims"; rather, the elements vary based on the particular cause of action. *Id.* at *48.

---

[1]  Plaintiff has stipulated to dismissal of claims against Gagliardi in his personal capacity under the ADA and ADEA, dismissal of the NJLAD claim based on Sexual Discrimination, and dismissal of his defamation action. Therefore, those claims are dismissed with prejudice.

Once a prima facie case has been established, the *McDonnell Douglas* analysis shifts the burden of articulating a "legitimate, non-discriminatory reason for the adverse employment action" to the employer.  *Stouch v. Twp. of Irvington*, 354 Fed. App'x 660, 666 (3d Cir. 2009) (citing *McDonnell Douglas*, 411 U.S. at 802-05); *see also Victor*, 2010 N.J. LEXIS 834, at *47 n. 9.  "The employer satisfies this burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).  However, "[t]he employer need not prove that the tendered reason *actually* motivated its behavior."  *Id.*

If the defendant-employer is able to articulate a legitimate reason for the adverse employment action, the burden shifts back to the plaintiff-employee to establish that the proffered reason is a pretext for discrimination.  The plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons, or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 764.  "A plaintiff will survive summary judgment if she can produce evidence sufficient 'to meaningfully throw into question' the employer's reason for the allegedly discriminatory action."  *Reich*, 2009 U.S. Dist. LEXIS 90540, at *29 (quoting *Fuentes*, 32 F.3d at 765).

At the summary judgment stage, the plaintiff-employee need not "'adduce evidence directly contradicting the [defendant-employer's] proffered legitimate explanations,'" but he may not strike down the defendant-employer's reasons without explanation.  *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 804).  Plaintiff must allege specific "weaknesses implausibilities, inconsistencies, or contradictions, providing sound reasons for why a reasonable factfinder could find them unworthy

of credence." *Fuentes*, 32 F.3d at 765.  Because the focus of this step of the analysis is "whether the employer acted with discriminatory animus," it is "not enough for a plaintiff to show that the employer's decision was wrong or mistaken." *Id.* (internal quotation marks and citations omitted).

### 1. Disability Discrimination Under the ADA

To establish a prima facie case of discrimination under the ADA, a plaintiff must establish that he "(1) has a disability, (2) is a qualified individual, and (3) has suffered an adverse employment action because of that disability." *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006).  A disability is defined by the ADA as (a) a physical or mental impairment that substantially limits one or more major life activities; (b) a record of such an impairment; or (c) being regarded as having such an impairment.  42 U.S.C. § 12102(1).  However, "[m]erely having an impairment does not make one disabled for purposes of the ADA.  Claimants also need to demonstrate that the impairment limits a major life activity." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 195 (2002).[2]

Major life activities are substantially limited if the impairment "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id.* at 197.  Additionally, "[a]n inability to work for a period of limited duration does not establish substantial limitation of a major life activity." *Berardi v. D.E. River Port Auth.*, No. 03-5864, 2005 U.S. Dist. LEXIS 42299, *10 (D.N.J. June 7, 2005) (citing *McDonald v. Pennsylvania*, 62 F.3d 92,

---

[2]*Toyota Motor* has been partially superseded by statute, the ADA Amendments Act of 2008, Pub. L. No. 110-325, which took effect on January 1, 2009.  Although the Court of Appeals for the Third Circuit has not stated whether those amendments apply retroactively, numerous circuits have determined that the 2008 Amendments to the ADA do not apply retroactively.  *Lytes v. DC Water & Sewer Auth.*, 572 F.3d 936, 940 (D.C. Cir. 2009); *Milholland v. Summer Cnty. Bd. of Educ.*, 569 F.3d 562, 565-67 (6th Cir. 2009); *EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009).

95 (3d Cir. 1995)).   Further, "'if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures . . . must be taken into account when judging whether that person is substantially limited in a major life activity.'" *Id.* (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999)).

Plaintiff alleges he "is a qualified person with a disability, which affected major life activities."[3]  Plaintiff states that he suffers from vision problems, namely his detached retina, and mental problems, severe depression, which affect his ability to see and work.  However, Defendants argue that a reasonable jury could not find that Plaintiff had an impairment that substantially limited a life activity.

Both seeing and working are defined as major life functions.   45 C.F.R. § 84.3 (j)(2)(ii). However, Plaintiff fails to establish that those major life functions are substantially limited on a long-term basis and not for merely a limited duration.  Plaintiff stated in his complaint that he "suffers from eye problems stemming from a clot in his eye that has caused him to undergo surgery and consequently miss time from work."  During his deposition, he explained that he suffered a pressure attack that affected his eyes and caused him to go blind in his left eye and suffer a detached retina.  Nevertheless, Plaintiff also stated that "I almost didn't get my sight back in the eye," and confirmed that he is able to read, drive, and see distances with the assistance of glasses.  Plaintiff further indicated on his Equal Employment Opportunity Commission Intake Questionnaire –

---

[3]In Plaintiff's Brief in Opposition to the Motion for Summary Judgment, Plaintiff contends that the Defendants now suggest that he does not have a perceived disability.  Plaintiff's complaint is void of any allegation of a perceived disability.  Thus, this Court will not consider that argument as a basis to establish a disability under either the ADA or the NJLAD.  *See Bell v. City of Philadelphia*, 275 Fed. App'x 157, 160 (3d Cir. 2008) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." (citations omitted)).

Disability ADA form in April 2004, that his detached retina was of a "[t]emporary nature," that he did not need a reasonable accommodation, and that he did not seek a reasonable accommodation.

With regard to Plaintiff's depression, Plaintiff does not clearly state in his complaint that he suffered from depression; nevertheless, assuming *arguendo* that Plaintiff had alleged that he suffered from severe depression, he cannot establish that it substantially limited a major life activity. A plaintiff's post-treatment condition is usually considered when determining whether the plaintiff is substantially limited in a major life activity. *See Berardi*, 2005 U.S. Dist. LEXIS 42299, at *11. A review of a letter from Plaintiff's treating Psychiatrist, Dr. Chris Jagar, M.D., indicates that Plaintiff's depression was temporary:

> [Plaintiff] was prescribed Lexapro, an antidepresent, and visited me regularly for counseling sessions. His symptoms improved somewhat during the year [(2006-2007)], but greatly improved when he learned there would be a new superintendent in Hoboken. His last office visit was 6/29/07, but I still keep in touch with Mr. Meyers by phone, and he tells me he has returned to work and is doing well, with resolution of his symptoms. He is no longer on medication.

Because Plaintiff has failed to establish that he suffers a disability under the ADA, he cannot establish a prima facie case of disability discrimination under the ADA. Summary judgement is granted in favor of the Board on this issue, and Plaintiff's claim under the ADA is dismissed.

### 2.    Disability Discrimination under the NJLAD

To establish a disability claim under the NJLAD, a plaintiff is required to (1) "prove that he or she was disabled," (2) "that he or she performed or could have performed the job with or without an accommodation," and (3) "that there was an adverse consequence." *Victor*, 2010 N.J. LEXIS 834, at *53-54. The NJLAD covers both physical and non-physical disabilities. *Viscik v. Fowler*, 173 N.J. 1, 15 (N.J. 2002) (citation omitted). "The physical and non-physical causes of the statute are

distinct from each other and provide separate ways of proving handicap." *Id.*

A plaintiff claiming a physical disability must prove that he or she is "(1) suffering from physical disability, infirmity, malformation or disfigurement (2) which is caused by bodily injury, birth defect or illness including epilepsy." *Id.* (citing N.J.S.A. 10:5-5(q)). A plaintiff claiming a non-physical disability must prove he "is suffering (1) from any mental psychological or developmental disability (2) resulting from an anatomical, psychological, physiological or neurological condition that either (a) prevents the normal exercise of any bodily or mental functions or (b) is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques." *Id.*at 16 (citations omitted). Unlike the ADA, the term "handicapped" in the NJLAD is "not restricted to 'severe' or 'immutable' disabilities and has been interpreted as significantly broader than the analogous provisions of the [ADA]." *Id* (citations omitted).

In this case, Plaintiff alleges a physical disability – his eye injury.[4] Plaintiff stated that he sometimes suffers from "blurriness in the eyes, or floaters in the eyes, or black spots." Because the definition of "disability" under the NJLAD specifically includes "any degree of . . . blindness or visual impediment," N.J.S.A. 10:5-5(q), Plaintiff is able to establish that he has a physical disability.

Considering the second prong, the parties do not appear to dispute that Plaintiff performed or could have performed the job with or without an accommodation.

─────────────────

[4]Plaintiff generally asserts in his Brief in Opposition to the Motion for Summary Judgement that his mental problems constitute a disability under the NJLAD. However, Plaintiff's pleading of his claim under the NJLAD does not mention a non-physical disability; rather, he states that he is a member of a protected class under the NJLAD "by virtue of his physical disability (eye injury), age, sexual orientation, and prior protected injury." Further, Plaintiff's "Statement of Facts" in his complaint, does not allege any non-physical disability or mental problems. This Court declines to consider the new claim raised by Plaintiff. *Bell*, 275 Fed. App'x at 160.

To establish the final prong of a prima facie case for disability discrimination, Plaintiff must have set forth facts that he suffered an adverse consequence due to his disability. Defendants claim Plaintiff fails to specify what actions taken by Defendants would constitute adverse employment actions. However, Plaintiff asserts that the Board's withholding of his increment for the 2006-2007 school year was an adverse employment action. Therefore, Plaintiff has alleged adequate facts demonstrating an adverse employment consequence.

Shifting the burden to Defendants to state a legitimate business reason for their action, Defendants assert that Plaintiff's increment was withheld due to the fact that Plaintiff was absent from work that year. Further, Defendants claim that Plaintiff was one of at least two people who did not receive an incremental raise to their annual salary at the end of the 2006-2007 school year because of excessive absenteeism. Defendants have met their burden.

Defendants' stated reason for the withholding of Plaintiff's increment shifts the burden back to Plaintiff to prove by a preponderance of the evidence that Defendants' explanation is pretextual. Plaintiff counters Defendants' reasoning by contending that his increment was withheld on April 28, 2006, several months before Plaintiff's leave of absence. Additionally, Plaintiff claims that he was the only teacher who did not receive an annual incremental raise for the 2006-2007 school year. Based on those facts, Plaintiff has sufficiently demonstrated that a fact-finder could reasonably believe the Defendants' explanations were pretextual. Therefore, a jury must decide whether Plaintiff's absenteeism and leave of absence provided Defendants with sufficient grounds to withhold his incremental salary. Accordingly, Defendants' motion to dismiss Plaintiff's disability claim is denied; this claim survives against both Defendants.

13

### 3.        Age Discrimination under the ADEA and the NJLAD

Age discrimination cases under the ADEA and the NJLAD are governed by identical standards and allocations of burdens of proof. *Lawrence v. Nat'l Westminster Bank*, 98 F.3d 61, 65 (3d Cir. 1996); *Kelly v. Moser, Patterson and Sheridan*, *LLP*, 348 Fed. App'x 746, 2009 U.S. App. LEXIS 22352, *2 n. 2 (3d Cir. Oct. 9, 2009).  Recently, the United States Supreme Court held that the burden of persuasion in ADEA claims does not shift from the plaintiff to the defendant. *Gross v. FBN Fin. Srvs.* 129 S. Ct. 2343, 2351 (2009).  Nevertheless, the Court of Appeals for the Third Circuit, in applying *Gross*, found no conflict in continuing to apply the *McDonnell Douglas* analysis to age discrimination cases, because the analysis does not shift the burden of persuasion to the defendant; it only shifts the burden of production. *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009).  Accordingly, Plaintiff must establish a prima facie case of age discrimination by demonstrating that he was (1) a member of the protected class, (2) who was qualified for the position, and (3) suffered an adverse employment action (4) under circumstances raising an inference of discriminatory action. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).

Defendants contend  that Plaintiff cannot establish that he suffered an adverse employment action.  Under the ADEA, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1).  The Court of Appeals for the Third Circuit has stated that "[a]ssigning an employee to an undesirable schedule can be more than a 'trivial' or minor change in the employee's working conditions." *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 788 (3d Cir. 1998).  Further, the Third Circuit has held that even a relatively minor change in an employee's schedule can create a material issue of fact. *Id.* Plaintiff  details two incidents of age-

14

based discrimination, but essentially alleges one adverse employment action – that Defendants altered Plaintiff's teaching schedule to induce him into accepting an early retirement package offered to the elder employees.  This Court finds that  the evidence of substantial changes in Plaintiff's teaching schedule is sufficient to satisfy the third prong of a prima facie case of discrimination under the ADEA.  *See id.* (citing *McGill v. Bd. of Educ.*, 602 F.2d 774, 780 (7th Cir. 1979)).

Defendants also argue that Plaintiff cannot establish the last prong of a prima facie case because he cannot demonstrate a causal connection between any alleged adverse action and his age. The United States Supreme Court has explained that this last prong of the prima facie case for age discrimination requires the plaintiff to show that age discrimination was the but for cause of the adverse employment action – it is not enough to show that age played a minor role in the decision. *Gross*, 129 S. Ct. 2350-51; *Smith*, 589 F.3d at 691.  However, "[t]he majority of courts that have addressed this issue post-*Gross* continue to apply the *McDonnell Douglas* framework at the summary judgment stage while also recognizing that at trial the plaintiff bears the burden of persuasion to prove that discrimination was the but for cause of the adverse employment action." *Ferruggia v. Sharp Elecs. Corp.*, No. 05-5992, 2009 U.S. Dist. LEXIS 75464, *7-8 (D.N.J. Aug. 25, 2009); *see also Connolly v. Mitsui O.S.K. Lines, Inc.*, No. 04-5127, 2009 U.S. Dist. LEXIS 86195, *13-14 (D.N.J. Sept. 21, 2009) (finding Plaintiff established prima facie case of age discrimination without analyzing whether age discrimination was but for causation of adverse employment action). Thus, this Court need only look to see if Plaintiff has alleged circumstances giving rise to an inference of discrimination.  Plaintiff's contention that Gagliardi wished to terminate the elder employees through a buyout program and that Plaintiff refused to accept such a buyout does such. Therefore, Plaintiff has established his prima facie case.

The burden shifts to Defendants to assert a legitimate, non-discriminatory reason for changing Plaintiff's teaching schedule.  The ADEA identifies two non-discriminatory justifications: (1) "age is a bona fide occupational qualification reasonably necessary to the normal operation of a particular business[,]" and (2) "the differentiation is based on reasonable factors other than age."  29 U.S.C. § 623(f)(1).  According to Defendants, the change in Plaintiff's teaching schedule was in response to staffing shortfalls due to necessary budget cuts approved and implemented by the Board. Defendants have met their burden.

Plaintiff must provide evidence that  Defendants' reason was pretextual.  He contends that there were no budgetary cuts or staffing shortfalls at that time.  Plaintiff has raised a plausible inconsistency from which a reasonable jury could discredit Defendants' proffered justification. Plaintiff's claim under the ADEA survives against the Board, and the claim under the NJLAD survives against both Defendants.

### 4.    Retaliation Claim under the NJLAD

A prima facie case for a retaliation claim under the NJLAD requires a plaintiff to demonstrate that: "(1) plaintiff was in a protected class; (2) plaintiff engaged in protected activity known to the employer; (3) plaintiff was thereafter subjected to an adverse employment consequence; and (4) that there is a causal link between the protected activity and the adverse employment consequence." *Victor*, 2010 N.J. LEXIS 834, at *49.  Defendants argue that plaintiff is unable to meet the first and forth prongs of this claim.

Plaintiff argues that the filing of his discrimination complaint with the Equal Employment Opportunity Commission (EEOC) and the New Jersey Office of Civil Rights (OCR) on February 10, 2007, constitutes his protected activity.  Plaintiff further alleges the following adverse employment

16

consequences: that he was not hired for the position of Music Coordinator or District Director of Music, that he was micro-managed, that he lost his stipends and increments, and that his job position was switched several times.  However, those facts do not illustrate a causal link because those acts occurred prior to Plaintiff's protected activity.  Ising began serving as District Director of Music in 2005 and it appears that Ising was promoted to Music Coordinator prior to Plaintiff's filing of his complaint in 2007.  Additionally, Plaintiff "began receiving complaints that he was not signing out properly" in March and April of 2006.  Finally, it appears that Plaintiff filed a grievance concerning the withholding of his stipends in both 2004 and 2006, alleged that his increment was withheld in the spring of 2006, and stated that his teaching schedule began to see changes as early as 2002.  Therefore, Plaintiff cannot establish the causal link between the protected activity and the adverse employment consequences needed to survive Defendants' motion.  Defendants' motion for summary judgment on this issue is granted.

**5.      Hostile Work Environment Claim under the NJLAD**

A hostile work environment claim under the NJLAD requires the plaintiff to show that (1) the conduct would not have occurred but for the employee's protected class and that the conduct was (2) "severe or pervasive enough to make a (3) reasonable [member of the protected class] believe that (4) the conditions of employment were altered and that the working environment is hostile or abusive."  *Lehrmann v. Toys R Us, Inc.*, 132 N.J. 587, 603-04 (N.J. 1993).

Defendants argue that any hostile work environment claims under the NJLAD, related to Plaintiff's age or disability, should be dismissed.  Defendants assert that Plaintiff has not alleged any discriminatory conduct or practices by Defendants stemming from Plaintiff's age or disabilities. This Court agrees.

17

Plaintiff must show by a preponderance of the evidence that he suffered discrimination because of his age or disability. *See id.* at 604. Although Plaintiff is not the moving party, under the *McDonnell Douglas* analysis, he still bears the initial burden of establishing a prima facie case. Plaintiff does not meet that burden. Plaintiff cites to his complaint, which states that he received complaints about signing out properly after making his protected communications about the illegal employment postings; he does not state how the complaints about signing in and out were causally related to his age or disabilities. Thus, Plaintiff cannot establish that the complaints would not have occurred but for his age or disabilities.

### B.    Timeliness of Equal Employment Opportunity Commission Filings

As a prerequisite to commencing an action under the ADA or the ADEA, plaintiffs who reside in deferral states are required to file a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within three hundred days of the alleged unlawful practice. 29 U.S.C. § 626(d)(2); 42 U.S.C. § 2000e-5(e)(1); *see also Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000); *McCullough v. Trenton Bd. of Educ.*, No. 07-5341, 2010 U.S. Dist. LEXIS 18683, *9 (D.N.J. Mar. 2, 2010). Deferral states are those that have "an agency authorized to grant relief for federally prohibited employment discrimination." *Watson*, 235 F.3d at 854. New Jersey is a deferral state. *McCullough*, 2010 U.S. Dist. LEXIS 18683, at *9.

Defendants contend that Plaintiff's Complaint fails to relate the date on which Plaintiff filed his discrimination charge. However, Plaintiff alleges that he filed his charge with the EEOC on February 13, 2007, and that the following discriminatory acts took place within three hundred days (on or after April 17, 2006): (1) Plaintiff's stipends were withheld in school years 2005-2006, 2006-2007, 2007-2008, and forward; (2) Plaintiff's increment was withheld for school year 2006-2007;

18

(3) Defendants illegally chose Ising for the Coordinator of Music position; and (4) the illegal posting of the District Director of Musical Studies was posted on August 31, 2006.  Viewing those facts in a light most favorable to Plaintiff, Defendants' motion is denied because Plaintiff has raised a genuine issue of material fact as to whether the alleged discriminatory acts took place within three hundred days.

### C.        Breach of Contract Claim

Pursuant to the New Jersey Employer-Employee Relations Act, "[g]rievance . . . procedures established by agreement between the public employer and the representative organization shall be utilized for any dispute covered by the terms of such agreement."  N.J.S.A. 34:13A-5.3.   As a teacher for the Hoboken School District, Plaintiff's employment is governed by the CBA, and it contains a grievance procedure.  The CBA contains a three-tiered grievance process.  "Level 1," permits any teacher to present a grievance to the principal or supervisor within thirty days after the teacher knew or reasonably should have known about the facts giving rise to the grievance.  At "Level 2," the teacher may appeal that decision  "through the Association to the Superintendent of Schools," and following a meeting with the teacher and his representative, the Superintendent shall render his decision, in writing, to the aggrieved teacher and the Association within ten school days after the conference.  Finally, at "Level 3," "if the aggrieved person or group is dissatisfied with the Superintendent's decision or if no decision is rendered within ten (10) school days, the Association may request, in writing, that the grievance be submitted to arbitration."  However, the Agreement also permits the Association to refuse to go to arbitration if it feels that the grievance is not meritorious.

Defendants argue that they are entitled to summary judgment on Plaintiff's breach of contract

claim for failure to pay Plaintiff stipends due under the CBA, because it requires a plaintiff to engage in a contractually-mandated grievance procedure prior to the commencement of such an action. Plaintiff asserts that Defendants' argument is a "non-starter" because Plaintiff filed a grievance and it was dismissed by the union over fear that Gagliardi would abolish Plaintiff's Coordinator of Music position.

It is clear that the CBA contains a grievance procedure and that such a procedure must be utilized. *See* N.J.S.A. 34:13A-5.3; *see also Bd. of Educ. of Bloomfield v. Bloomfield Educ. Ass'n*, 126 N.J. 300, 1991 N.J. LEXIS 116, *12 (N.J. 1991). Generally, "the duty to arbitrate springs from contract, and the parties can only be compelled to arbitrate those matters which are within the scope of the arbitration clause of their contract." *Id.* (citation omitted). Plaintiff alleges he did not "receive the requisite stipends, seniority, increments, pay and benefits Plaintiff was entitled to receive contractually." However, "[r]ectification of any errors" in salary payment, and payment of "additional monies over and above [the] salary guide" are subject to the CBA. Defendants have met their burden as the movant of establishing that no genuine issue of material fact exists.

Plaintiff's assertion of unclean hands is misplaced and does not raise a genuine issue of material fact. *See Lacey Twp.*, 772 F.2d at 1109. The Court of Appeals for the Third Circuit has explained that the doctrine of unclean hands is a defense that "applies when the party seeking relief is guilty of fraud, unconscionable conduct or bad faith directly related to the matter at issue that injures the other party and affects the balance of equities." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 147 n. 12 (3d Cir. 1999); *see also Saudi Basic Indus. Corp. v. ExxonMobil Corp.*, 401 F.Supp. 2d 383, 386 (D.N.J. 2005) ("The doctrine of unclean hands 'is confessedly derived from the unwillingness of a court, originally and still nominally one of conscience, to give its peculiar relief to a suitor who in the very

20

controversy has so conducted himself as to shock the moral sensibilities of the judge.  It has nothing to do with the rights or liabilities of the parties; indeed the defendant who invokes it need not be damaged, and the court may even raise it sua sponte.") The Plaintiff is the party seeking relief in this suit by bringing a breach of contract claim against Defendants; thus it is not in the proper position to raise the affirmative defense of unclean hands.  Defendants are granted summary judgment on this issue; the breach of contract claim is dismissed with prejudice.

### D.    First Amendment Claim

Courts in this Circuit have expressly recognized that "'a public employee has a constitutional right to speak on matters of public concern without fear of retaliation.'" *Hogan v. Twp. of Haddon*, 278 Fed. App'x 98, 102 (3d Cir. 2008) (quoting *McKee v. Hart*, 436 F.3d 165, 169-70 (3d Cir. 2006).  A public employee may not be silenced by their employer merely because the employer disapproves of the content of the speech. *Baldassare v. New Jersey*, 250 F.3d 188, 194 (3d Cir. 2001) (citing *Rankin v. McPherson*, 483 U.S. 378, 384 (1987)).  Therefore, a public employee may assert a First Amendment violation when an employer engages in retaliatory harassment due to the employee's speech. *McKee*, 436 F.3d at 170.

A public employee's retaliation claim based on engaging in protected activity is evaluated under a three-step process.  In order to prove retaliation, Plaintiff must demonstrate that (1) he engaged in constitutionally protected activity, (2) the Board responded with retaliation, and (3) the protected activity caused the retaliation. *Hogan*, 278 Fed. App'x at 103 (citation omitted).  The first determination is a question of law for the court, whereas the second and third are questions  for the fact finder. *Baldassare*, 250 F.3d at 195.

For speech to be protected by the First Amendment and considered a protected activity, the

21

speech must relate to a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 142 (1983). "'A public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community.'" *Baldassare*, 250 F.3d 195 (quoting *Green v. Phila. Hous. Auth.*, 105 F.3d 882, 885-86 (3d Cir. 1997)). A court may determine that speech involves a matter of public concern if the matter attempts "to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials." *Holder v. City of Allentown*, 278 Fed. App'x 98, 195 (3d Cir. 1993) (internal quotation marks and citations omitted); *see also Swineford v. Snyder Cnty.*, 15 F.3d 1258, 1271 (3d Cir. 1994) ("Speech disclosing public officials' misfeasance is protected."); *O'Donnell v. Yanchulis*, 875 F.2d 1059, 1061 (3d Cir. 1989) (stating "allegations of corrupt practices by government officials are of the utmost public concern").

Defendants claim that Plaintiff's claim for violation of the First Amendment should be dismissed because Plaintiff has not alleged facts that he engaged in protected speech and vaguely asserts that Defendants engaged in retaliatory actions. Plaintiff asserts that the following communications are protected: Plaintiff's communications about (1) "several illegal positions, including several 'no show' jobs"; (2) employees serving in positions for which they were not qualified; and (3) the withholding of stipends.

Although Plaintiff claims that he made protected communications, he failed to clearly set forth where, when, or to whom his protected communications were made. Further, Plaintiff has not pointed this Court to documents that clearly evidence such information, which would establish that communications were actually made. Therefore, Plaintiff has not met his burden in defending the motion for summary judgment because "unsupported allegations" are insufficient to defeat summary judgment. *Anderson*, 477 U.S. at 247-48. Accordingly, Defendants' motion for summary judgment

22

on this issue is granted.

      **E.**    **CEPA Claim**

      To state a claim under CEPA, a plaintiff must allege that: "(1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a 'whistle-blowing' activity described in N.J.S.A. 34:19-3(c); (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistleblowing activity and the adverse employment action." *Caver v. City of Trenton*, 420 F.3d 243, 254 (3d Cir. 2005).  As to the first step of that claim, the Supreme Court of New Jersey has explained that "a plaintiff must set forth facts that would support an objectively reasonable belief that a violation has occurred," but a plaintiff need not "show that a law, rule, regulation or clear mandate of public policy actually would be violated if all the facts he or she alleges are true."  *Dzwonar v. McDevitt*, 177 N.J. 451, 464 (N.J. 2003).

      Defendants argue that because Plaintiff has not identified a specific state law, code, regulation, or public policy, he cannot prove that he held an objectively reasonable belief that a violation had occurred.  However, Plaintiff's complaint states that he made "complaints about certain individuals being employed-or having 'no show jobs' in violation of state law, code, and regulation, as well as federal law."  Although Plaintiff's allegations are generalized, we must nevertheless view those allegations in a light most favorable to Plaintiff.  In light of that requirement,  Plaintiff has set forth at least an objectively reasonably belief that public policy would be violated if individuals were hired or maintained "no show jobs" in violation of law.

      Defendants also maintain that Plaintiff cannot establish that he engaged in whistle-blowing activity.  Pursuant to CEPA, whistle-blowing activity occurs when an employee "[d]iscloses, or

threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer or another employer, with whom there is a business relationship, that the employee reasonably believes" is in violation of a law, rule, or regulation or is fraudulent or criminal.  N.J.S.A. 34:19-3. Here, similarly to Plaintiff's First Amendment Claims, Plaintiff's submissions to this Court do not clearly set forth when or to whom he disclosed or threatened to disclose the alleged violations. Therefore, a reasonable jury could not return a verdict in his favor because he cannot make out a prima facie case under CEPA.

## IV.     CONCLUSION

For the foregoing reasons, this Court concludes that Defendants' motion for summary judgment is granted in part and denied in part.  Summary judgment is granted in favor of Defendants as to Plaintiff's disability discrimination claim under the ADA, retaliation claim under the NJLAD, hostile work environment claim under the NJLAD, breach of contract claim, First Amendment claim, and CEPA claim; accordingly, those claims are dismissed with prejudice.   Additionally, Plaintiff has stipulated to dismissal of claims against Gagliardi in his personal capacity under the ADA and ADEA, dismissal of the NJLAD claim based on sexual discrimination, and dismissal of his defamation action. Therefore, those claims are also dismissed with prejudice.  However, Plaintiff's claims under the NJLAD for age and disability discrimination survive against both Defendants, and Plaintiff's claim for age discrimination under the ADEA survives against the Board.


*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.